**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Gerardo Edmundo Andrada-Pastrano, Movant/Defendant | CV-14-2608-PHX-JAT (JFM) CR-12-0877-PHX-JAT |
| -vs- | **Order and Report & Recommendation on Motion To Vacate, Set Aside or Correct Sentence** |
| United States of America, Respondent/Plaintiff. | |

## I.    MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255  on December 1, 2014 (Doc. 1).  On May 26, 2015 Respondent filed its Response (Doc. 4).    Movant filed a Reply on July 27, 2015 (Doc. 12).  In addition, Movant has filed a Motion to Appoint Investigator (Doc. 11).

The Movant's Motion is now ripe for consideration.    Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.    FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

**Facts and Charges** - On March 7, 2012, Movant was arrested following a traffic stop during which the Pinal County Sheriff's Office found 169.4 pounds (77 kg) of marijuana in the rental vehicle he was driving. The investigation revealed that Movant was part of a marijuana trafficking operation shipping marijuana to the Midwest and east

1

coast.  (Plea Agreement, CR 692 at 9.) (The record in the underlying criminal case, CR-12-0877-PHX-JAT, is referenced herein as "CR ___.")

Following an original Indictment filed April 26, 2012 (CR 3), and a First Superseding Indictment filed April 9, 2013 (CR 201), on November 19, 2013, Movant was charged in a Second Superseding Indictment (CR 396) with one count of conspiring to possess with the intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 41(a)(1) & 841(b)(1)(B)(vii) (Count 1), and one count of possessing with the intent to distribute less than 100 kilograms, but 50 kilograms or more of marijuana, in violation of  U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 8).

**Plea Agreement** - Counsel was appointed and eventually Movant entered into a written Plea Agreement (CR 692), agreeing to plead guilty to the lesser charge of Count 8 (50 plus kilograms), in exchange for an agreement for a two or three level reduction in the offense level for acceptance of responsibility, and dismissal of Count 1.  The Plea Agreement included the following provision:

> 6.   **WAIVER OF DEFENSES AND APPEAL RIGHTS**
> a.   The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under Title 18 U.S.C. § 3582(c).   This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

(CR 692 at 4.)

Movant appeared with counsel for a change of plea on December 5, 2013 before U.S. Magistrate Judge Logan.  (CR 458, M.E. 12/5/13; CR 752, R.T. 12/5/13.)  Counsel initially advised the Court that Movant had concluded not to proceed with the Plea Agreement. (CR 752, R.T. 12/5/13 at 2.)   The Court reviewed with the parties the

sentencing exposure at trial, including criminal history, the potential for sentencing as a career offender and a life sentence, and application of an "851 enhancement," etc. (*Id.* at 2-7.) The prosecution reviewed the potential for an 851 enhancement and the evidence against Movant. (*Id.* at 7.) The Court recessed to allow Movant to consult with counsel. (*Id.* at 8.)

Upon returning, the parties had modified the Plea Agreement to delete a name from the factual basis, and to correct a serial number from the forfeited items. (*Id.* at 9-10.) Movant was sworn and testified that he had changed his mind after consulting with counsel, not on the basis of the discussion with the Court, but because of the risk of the 851 enhancement. Counsel advised that he and Movant had discussed the potential for the enhancement on a variety of occasions. (*Id.* at 10-11.) Movant testified that he had reviewed the Plea Agreement with counsel, understood the plea agreement, and was pleading voluntarily. The Court reviewed the potential fines, prison terms, and assessments, the application of the sentencing guidelines, agreements by the prosecution, and trial rights. (*Id.* at 11-21.) Movant inquired about his right to a jury to determine sentencing enhancements, and counsel responded that the matter would be left to the Court. (*Id.* at 21.) The prosecution verified that the amount of marijuana argued at sentencing would be limited to the amount in his possession upon arrest. (*Id.* at 22.) The Court reviewed the lack of limits on the sentencing judge, the forfeitures, and the elements of the offense. (*Id.* at 22-25.) The prosecution reviewed the factual background, and Movant admitted to knowingly possessing the marijuana in the car for delivery to another person. (*Id.* at 25-27.) Movant testified that he was satisfied with counsel and his desire to plead guilty, and entered a plea of guilty. (*Id.* at 27-28.) The Court found the plea knowingly, intelligently and voluntarily entered, supported by a factual basis, and that Movant was competent to plead, and accepted the plea. (*Id.* at 28.) The matter was set for sentencing. (*Id.*) A Findings and Recommendation Upon a Plea of Guilty (CR 460) was filed on the same date.

On December 23, 2013, District Judge Teilborg adopted the Magistrate Judge

3

Findings and Recommendation.  (CR 544, Order 12/23/13.)

**Sentencing** - On April 9, 2014, defense counsel Kessler filed a Motion to Withdraw (CR 614) arguing a conflict of interest.  The Motion was granted, and counsel Baggot was appointed.  (CR 618, Order 4/14/14.)

On May 30, 2014, the prosecution filed a Sentencing Memorandum (CR 679) requesting a sentence of 57 months, calculated upon a base offense level 22, a three level reduction for acceptance of responsibility, an additional two level reduction based upon anticipated modifications to the guidelines, for a calculated offense level 17.  With a criminal history category V, the guidelines range was 46 to 57 months.  The prosecution argued that, in accordance with the Pre-Sentence Report, sentencing at the higher end was appropriate.

On June 2, 2014, Movant filed a Request for Change of Counsel (CR 685), arguing that prior counsel Kessler had: (1) improperly advised Movant that he could be sentenced as a career offender; (2) failed to adequately investigate the basis for the criminal investigation; (3) failed to pursue claims of failure to disclose information regarding the confidential informant; and (4) failed to do an adequate investigation of Movant's criminal history prior to recommending the plea agreement, and that newly appointed counsel Baggot had refused to pursue the issue.

On June 4, 2014, Movant appeared with counsel.  The Court denied the motion for change of counsel, and advised Movant on his right to proceed *pro se*.  Movant elected to proceed with sentencing with counsel.  (CR 785, R.T. 6/4/14 at 1-3.)  The Court accepted the plea agreement.  Movant argued that he had seen the Pre-Sentence Report but had not reviewed it with counsel. Counsel reported that he had discussed the Pre-Sentence Report with Movant, and Movant seemed to understand it.  The Court inquired whether Movant desired more time.  Movant declined, and related that he had emailed his objections to the report to counsel Baggot, and reviewed his factual objections.  The Court responded that the facts objected to would not bear on the Court's decision.  (*Id.* at 3-7.)  Counsel objected to the inclusion of juvenile delinquencies as

convictions, and the parties and court discussed the disparate treatment of other drivers for the trafficking organization, and the basis for treating Movant as an average participant, rather than a minor role. The Probation Officer reported that the criminal history had been corrected in an amendment.  (*Id.* at 7-10.)  The Court accepted the probation officer's calculation of the offense level, including the reductions for acceptance of responsibility and the downward departure for the pending guidelines modification, and the criminal history with a range of 46 to 57 months.  (*Id.* at 10-12.)

Movant argued extensively in his own behalf about the inappropriateness of a lengthy sentence.  (*Id.* at 12-15.)  Counsel argued the inappropriateness of a long sentence, Movant's family and criminal history, his 20 year clean record, and insignificant role in the trafficking organization, and Movant's lack of sophistication as a criminal. Counsel requested a sentence of 30 months. (*Id.* at 15-22.) The prosecution argued Movant's priors, supervised release and probation, the seriousness of the offense, and the concessions already made, and requested a sentence of 57 months.  (*Id.* at 23-25.)

Movant was sentenced to 57 months.  (*Id.* at 25-31.)  The Court reviewed the waiver of rights of appeal and collateral attacks in the plea agreement, and Movant eventually agreed that he understood he had waived those rights.  (*Id.* at 31-32.)  The Court recommended participation in a drug and alcohol abuse program, but declined to recommend a place of incarceration.  (*Id.* at 32-35.)


**B.** **PROCEEDINGS ON DIRECT APPEAL**

Notwithstanding his waivers, Movant promptly filed a Notice of Appeal (CR 701), but eventually filed a motion for voluntary dismissal, which was granted on September 29, 2014.  (*See* CR 815, Order of 9th Circuit, 9/29/14.)

**C.** **PRESENT FEDERAL HABEAS PROCEEDINGS**

**Motion to Vacate** – Movant commenced the current case by filing his Motion to

5

Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 on December 1, 2014 (Doc. 1).  Movant's Motion asserts the following four grounds for relief:

(1) His guilty plea was involuntary because plea counsel Kessler rendered ineffective assistance in failing to:

    a. investigate claims that the arresting officer had completed the traffic stop prior to searching Movant's vehicle (Motion, Doc. 1 at physical page 5);

    b. investigate benefits to the informant for cooperating, including removal of a $100,000 tax lien (*id.* at physical page 5-6);

    c. file a motion to recuse the trial judge for bias based upon a reputation for never granting a motion to suppress (*id.* at physical page 6-7);

    d. investigate whether Movant's deferred adjudication could be used to enhance his sentence under section 851 because it did not amount to a conviction and the 180 speedy trial time under the Interstate Agreement of Detainers had expired, with detainers being twice removed improperly (*id.* at physical page 7-8);

    e. investigate whether prior convictions could subject Movant  to sentencing under the Career Criminal Act (*id.* at physical page 8-9);

    f. investigate an affirmative defense to the conspiracy count based on a buyer/seller relationship between the drug trafficking organization and Movant's aunt and uncle (*id.* at physical page 9-10); and

    g. lying to Movant that his co-defendants had already signed plea agreements (*id.* at physical page 11).

(2) Prosecutorial misconduct by willfully withholding favorable evidence from the defense. He alleges that this was prosecutorial misconduct and that the government's interference "amounts to a constructive denial of effective assistance of counsel."

6

(3) Ineffective assistance of sentencing counsel, Mr. Baggot, by failing to challenge the use of the deferred adjudication to enhance his sentence, and failure to investigate Movant's claims that plea counsel had misled Movant into accepting the plea agreement.

(4) The Court abused its discretion during sentencing because the Court "dismissed...as irrelev[a]nt" Movant's request for a minor role variance, the Court's reasoning for a maximum sentence was unreasonable, and the Court failed to liberally construe Movant's motion for change of counsel as a motion to withdraw from the plea agreement.

**Response** - On May 26, 2015, Respondent filed its Response (Doc. 4). Respondent argues that: (1) Movant expressly waived his right to collateral attacks (*id.* at 3-5); (2) Movant has failed to establish ineffective assistance of plea counsel Kessler (*id.* at 5-12); (3) Movant has failed to establish ineffective assistance of sentencing counsel Baggot (*id.* at 12-14); (4) no favorable evidence was withheld, disclosures prior to a plea agreement are not required, and Movant was aware of the information (*id.* at 14); (5) the sentence was proper, and his arguments against are without merit (*id.* at 14-15).

**Reply** - On July 27, 2015, Movant filed a Reply (Doc. 12). Movant argues his appellate rights are not waivable, his claims are meritorious, and an evidentiary hearing is required to resolve them.

## III.    APPLICATION OF LAW TO FACTS

### A.    WAIVER OF COLLATERAL ATTACK RIGHTS

Respondents argue that Movant has waived his right to file the instant Motion to Vacate. Movant's plea agreement included a waiver of "any right to file...any collateral attack...that challenges the conviction...the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any...motions under 28 U.S.C. §§ 2241 and

2255 (habeas petitions)." (CR 692 at 4.) The present motion is just such a collateral attack.

**__Enforceability of Waivers__** - The Ninth Circuit regularly enforces "knowing and voluntary" waivers of appellate rights in criminal cases, provided that the waivers are part of negotiated guilty pleas, *see United States v. Michlin*, 34 F.3d 896, 898 (9th Cir.1994), and do not violate public policy, *see United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir.1996) (cataloguing public policy exceptions). Similarly, the right to collateral review may be waived. *See United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1993). Such waivers usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements. *See Baramdyka*, 95 F.3d at 843.

Moreover, the defendant's rights to challenge any sentencing errors may be explicitly waived. *See e.g. United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991). Further, where a waiver specifically includes the waiver of the right to attack a sentence, then it also waives "the right to argue ineffective assistance of counsel at sentencing." *U.S. v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000). Here, Movant's waiver extended to sentencing issues.

Granted, there are some flavors of errors at sentencing that are not waivable. *See e.g. United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991) (sentence violates the terms of the plea agreement); *United States v. Johnson*, 67 F.3d 200, 203 n. 6 (9th Cir.1995) ("sentencing error could be entirely unforeseeable and therefore not barred"); *United States v. Jacobson*, 15 F.3d 19 (2nd Cir.1994) (sentencing disparity among co-defendants based entirely on race); *United States v. Marin*, 961 F .2d 493, 496 (4th Cir.1992) (sentence in excess of maximum statutory penalty or based on a constitutionally impermissible factor such as race). Here, however, Movant does not assert any error of those types occurred at sentencing. Thus, Movant's sentencing claims remain subject to his waiver.

*Knowing and Voluntary Requirement* - It is true that to be enforceable, such waivers must be made "knowingly and voluntarily." *United States v. Michlin*, 34 F.3d

896, 898 (9th Cir.1994).  The Supreme Court has stated that where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. . . . [A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective]." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (internal quotation marks and citations omitted).

Because, as discussed hereinafter, the undersigned concludes that Movant has failed to establish ineffective assistance of counsel in entering into the plea agreement, thus Movant is bound by his waiver, and this Motion must be dismissed with prejudice.

**B.     INEFFECTIVE ASSISTANCE IN ENTERING PLEA**
**1.     Standard for Ineffective Assistance of Counsel**

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).    The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*,

233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).    The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

To establish prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).   The pleading defendant must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Strickland*, 466 U.S. at 694. The Court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible. *See United States v. Keller*, 902 F.2d 1391, 1394-95 (9th Cir. 1990) (movant failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence).

**2.    Standard for Evidentiary Hearing**

Section 2255 requires that the district court grant a movant's motion to hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.  "The court may deny a hearing if the petitioner's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary

10

dismissal." *U.S. v. McMullen,* 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations omitted).    For the reasons discussed hereinafter, the undersigned concludes that Movant's claims are either conclusively determined by the record, or fail to state a clam for relief or are so palpably meritless as to render a hearing unnecessary.

**3.      Ineffectiveness of Sentencing Counsel**

Movant argues in Ground Three that counsel was ineffective at sentencing in two aspects, one relating to a sentencing issue, and one relating to the performance of plea counsel.

To the extent that Movant argues that counsel was ineffective with regard to arguments at sentencing, or investigations relating to sentencing, those matters would not be relevant to the voluntariness of his plea, and thus are waived by his waiver of his collateral attack rights. *See Nunez*, 223 F.3d at 959.

To the extent that Movant contends that the counsel who represented him at sentencing (Mr. Baggot) failed to investigate the allegations of ineffectiveness regarding plea counsel (Mr. Kesseler) in Ground One, those claims will be addressed hereinafter in connection with the claims in Ground One.

**4.      Ineffectiveness of Plea Counsel**

Movant argues in Ground One of his Motion to Vacate that his guilty plea was involuntary because plea counsel Kessler rendered ineffective assistance with regard to: (1) the traffic stop; (2) the informant; (3) the bias of the trial judge; (4) his Texas deferred adjudication and § 851 enhancement; (5) the career offender guidelines; (6) a buyer/seller defense to conspiracy; and (7) misrepresentations regarding co-defendants' pleas.

a)      **Ground 1(a) - IAC re Traffic Stop**

In Ground 1(a), Movant argues that trial counsel was ineffective for failing to

11

investigate claims that the arresting officer had lied about completing the traffic stop prior to searching Movant's vehicle. Movant argues that the narrative of other officers indicates that the car rental agreement was found "upon searching the vehicle" while the arresting officer claims to have returned those documents to Movant upon completing the traffic stop and prior to undertaking a search (Motion, Doc. 1 at physical page 5.)

Respondent argues: (1) trial counsel did investigate and filed a Motion to Suppress arguing that the traffic stop was pretextual and the ensuing search was illegal; (2) Movant was already aware of the discrepancy; (3) the motion would have ultimately been unsuccessful; and (3) Movant elected to plead guilty prior to resolution of the motion to obtain a more favorable sentence.  (Response, Doc. 4 at 10.)

Movant replies that the motion to suppress had merit under *Rodriguez v. U.S.,* 135 S.Ct. 1609, 575 U.S. ___ (2015).   Movant argues that *Rodriguez* is retroactively applicable, and had he proceeded to trial he could have had the benefit of *Rodriguez* on appeal.  (Reply, Doc. 12 at 3-4.)

Indeed, on September 16, 2013, trial counsel filed a Motion to Suppress (CR 314), arguing that the officer lacked probable cause to perform a traffic stop, improperly opened a vehicle door and encouraged the canine to alert.   But those are not the arguments that Movant now asserts.   Instead, he argues that counsel should have challenged the timing of the movement of the documents and search in comparison to the traffic stop.

In his Reply, Movant relies upon *Rodriguez* in which the Court held that the police may not routinely "extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff."  135 S. Ct. at 1614.  In doing so, the Court observed that the relevant issue was not the relative timing of the search and completion of the traffic stop, but whether the search prolonged the stop.   "The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket…but whether conducting the sniff "prolongs"—i.e., adds time to—"the stop."  135 S. Ct. at 1616 (citations omitted).

12

Thus, the fact that the search may have been conducted before completion of the traffic stop suggest not that the search was illegal under *Rodriguez*, but rather that it did not extend the time of the traffic stop and thus was not improper.  Thus, a motion to suppress (or advice to Movant about the potential for such a motion) on the basis that the search was conducted while the traffic stop was on-going, would not have been fruitful.

Moreover, to the extent that Movant suggests that counsel should have anticipated *Rodriguez*, his claim contravenes the Supreme Court's instruction that counsel's conduct is to be evaluated without the benefit of hindsight. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.   "What was reasonable under the circumstances must be evaluated as of the time that the legal services were rendered so as to minimize the distortions of hindsight."  *Caro v. Woodford*, 280 F.3d 1247, 1254 (9th Cir. 2002). In June, 2014, when counsel was advising Movant on his plea agreement, *Rodriguez* had not yet been decided, and was the resolution of a split among lower courts, including the Eighth Circuit and state courts.  *Rodriguez*, 135 S. Ct. at 1614.  Reasonable counsel could have relied upon contrary authority to conclude that a claim along the lines of *Rodriguez* would have been futile.

Moreover, because the effectiveness of counsel is not measured with hindsight, neither the retroactivity of *Rodriguez* nor its availability on direct appeal is relevant.

To the extent that Movant simply argues the discrepancy in timing as a basis for impeachment of the arresting officer (e.g. to pursue the pretextual nature of the stop), Movant was aware of the underlying facts.   In his *pro per* Request for Change of Counsel, filed May 21, 2013 (CR 259), Movant argued the discrepancy in the relative timing arising from the return of Movant's documents.  (CR 259 at 3.)

Further, reasonable counsel could have discounted the impact of the discrepancy in advising Movant.  The subsequent discovery of the documents during the search by other officers is not inconsistent with the first officer having returned them to Movant. They could have been left in the vehicle after being returned.   Moreover, the impeachment would have been weak, focusing on a collateral issue, and depending upon

applying exacting interpretations of the officers' records of the relative timing issues. Reasonable counsel could conclude that the court would not have employed the same exactitude in evaluating the officers' reports and thus no significant damage to their credibility would result.

Moreover, counsel could have simply reach a reasonable conclusion that the issues he had raised in the motion to suppress stood the greatest likelihood of success, and thus made the tactical decision to focus on those issues, and tailored his motion and his advice to Movant accordingly.

The undersigned concludes that Movant has failed to allege facts to show that counsel performed deficiently with regard to the propriety of the traffic stop.

### b)   Ground 1(b) - IAC re Informant

In Ground 1(b), Movant argues that trial counsel was ineffective for failing to investigate benefits to the informant for cooperating, including his involvement as the target of an IRS investigation and the removal of a $100,000 tax lien.  (Motion, Doc. 1 at physical page at 5-6.)

Respondents argue that Movant and counsel were aware of those facts, and plea counsel had moved to suppress the results of the wiretap as a result, and Movant fails to allege facts to show that he would not have pled guilty with additional information on this point.  (Response, Doc. 4 at 11.)

In his Reply, Movant argues that while he and counsel may have been aware of the investigation, counsel failed to "obtain the necessary documents" to establish that the investigating agent had made misleading statements under oath in obtaining the wiretap. (Reply, Doc. 12 at 11-13.)  In particular, Movant references documents seized in a raid on lead counsel's home and office.  (*Id.* at 12.)  Movant proffers no information on what was contained in such documents.

The record reflects that plea counsel filed a motion to suppress the results of the wiretap, based in part on the assertions that "the informant was intimately wrapped up

14

with the IRS criminal division… engaged in some form of fraudulent conduct on his taxes." (CR 347 at 11.)   The prosecution responded, arguing that Movant lacked standing to challenge the wiretaps because he failed to show that he was ever intercepted over the resulting wiretaps. (CR 362)   Movant did not reply, and the motion was not decided.

Movant proffers nothing to show that he was in fact intercepted with the wiretaps.

The fact that evidence from those wiretaps might have been used against Movant is irrelevant.

> The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing.

*Alderman v. United States*, 394 U.S. 165, 171-72 (1969).   Moreover, 18 U.S.C. § 2518(10)(a) limits motions to suppress wiretaps to an "aggrieved person." "Aggrieved person" is limited under 18 U.S.C. § 2510(11) to "a person who was a party to any intercepted" communication.

Absent a showing that Movant was indeed a party to any of the intercepted communications, pursuing a motion to suppress the communications would have been futile regardless of the untrustworthiness of the confidential informant who supplied the basis for the wiretap order, or the misrepresentations made by the officer obtaining the order.[1]   Thus, further investigation on this point or advice to Movant would have been futile.

The undersigned concludes that Movant has failed to allege facts to show that counsel performed deficiently with regard to the informant.

/ /

/ /

---

[1] Even if Movant could show that some communication with him was intercepted, he proffers nothing to suggest that the contents of his communication were significant enough evidence to have impacted his decision to plead guilty.

15

c)    **Ground 1(c) - IAC re Judge Bias**

In Ground 1(c), Movant argues that trial counsel was ineffective for failing to file a motion to recuse the trial judge for bias based upon a reputation for never granting a motion to suppress.  (Motion, Doc. 1 at physical page 6-7.)  Respondents argue that any such motion would have been futile because the motion to suppress was, in any event, futile.  (Response, Doc. 4 at 10, n.8.)

Movant proffers no basis for his conclusion that Judge Teilborg was biased against granting motions to suppress.[2]  Even it were assumed *arguendo* that a review of the judge's rulings would evidence such a pattern, that would not support a motion to recuse.   "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Moreover, a motion to recuse based on bias must demonstrate bias towards the particular litigant.

> For a judge to be disqualified for bias or prejudice…the bias or prejudice must be "personal," as opposed to "judicial." A personal bias has been defined as "an attitude toward petitioner that is significantly different from and more particularized than the normal, general feelings of society at large."

Wright & Miller, *Grounds for Disqualification—Bias or Prejudice*, 13D Fed. Prac. & Proc. Juris. § 3542 (3d ed.).  Almost by definition, a pattern of rulings in prior cases would not support such a showing.  Moreover, such rulings may just as likely result from a stringent view of the applicable law. "A judge's views on legal issues may not serve as the basis for motions to disqualify."  *United States v. Conforte*, 624 F.2d 869, 882 (9th Cir. 1980).

Accordingly, a motion to recuse would have been sufficiently unlikely to succeed that reasonable counsel could have concluded it to be unworthy of pursuing, unworthy of

---

[2] A glancing review reflects that Judge Teilborg had indeed granted at least one motion to suppress in the year preceding Movant's conviction.  *See e.g. United States v. Quintero-Mendoza*, CR 11-1298-PHX-JAT, 2012 WL 1946836, at *1 (D. Ariz. May 30, 2012).  Moreover, in general, motions to suppress are rarely successful. *See* Russell M. Gold, *Beyond the Judicial Fourth Amendment: The Prosecutor's* Role, 47 U.C. Davis L. Rev. 1591, 1665 nn. 315-317 (2014) (citing studies).

discussion with Movant as part of advising him to accept the plea, or unworthy of altering Movant's analysis of the advisability of the plea.

The undersigned concludes that Movant has failed to allege facts to show that counsel performed deficiently with regard to a motion to recuse.

### d)   **Ground 1(d) - IAC re 851 Enhancement and Deferred Adjudication**

In Ground 1(d), Movant argues that trial counsel was ineffective for failing to investigate whether Movant's deferred adjudication in Texas could be used to enhance his sentence under section 851 because it did not amount to a conviction and the 180 day speedy trial time under the Interstate Agreement of Detainers (IAD) had expired, with detainers being twice removed improperly.  (Motion, Doc. 1 at physical page 7-8.)

Respondents argue that any such claims by counsel would have been futile because the Texas prosecution was properly considered at sentencing because it was not unconstitutionally obtained without counsel, and deferred adjudications are properly treated as convictions under the Sentencing Guidelines.  (Response, Doc. 4 at 13-14.)

Movant replies that the trial court was obligated to rule on the IAD issue before relying on the prior. He further argues that Respondents argument is founded upon a hypothetical enhancement and outcome at trial. (Reply, Doc. 12 at 3, 6-7.)

**Hypothetical Analysis** – Movant complains that the deficiency of counsel's advice cannot be measured based upon an amended indictment and trial that never occurred.  (Reply, Doc. 12 at 3.)   To the contrary, counsel is obligated to use his reasonable professional judgment to provide a defendant considering a plea offer with information about the potential consequences of proceeding to trial.  That, by nature, mandates providing a prognosis on events yet to occur (and when the plea is accepted, to never occur).  As discussed hereinafter, Movant provides no valid reason to believe that the Government would not or could not amend the indictment to allege the § 851 enhancement.

Nor does Movant provide any reason to believe that counsel performed

17

1  deficiently by anticipating a significant risk of loss at trial.  Movant proffers no defenses

2  other than those which, as discussed herein, either were futile or at best questionable.

3  **851 Enhancements** – Movant was indicted in Count I under 21 U.S.C. §

4  841(b)(1)(B)(vii), which mandates a sentence of 5 to 40 years for possession within

5  intent to distribute 100 kilograms or more of marijuana.[3]  However, that section also

6  provides: "If any person commits such a violation after a prior conviction for a felony

7  drug offense has become final, such person shall be sentenced to a term of imprisonment

8  which may not be less than 10 years and not more than life imprisonment."  21 U.S.C. §

9  841(b)(1)(B).

10  However, 21 U.S.C. § 851 mandates that before the government seeks such

11  enhanced sentencing based upon a prior conviction, that the prosecution must first file an

12  information alleging the prior conviction.  The statute then provides an opportunity for

13  the defendant to deny the prior conviction, or challenge its validity.  21 U.S.C. § 851(c).

14  **One Prior Sufficient** – Movant had two prior drug offense convictions.  Section

15  841(b)(1)(B) only requires one prior.  Thus, elimination of the one deferred adjudication

16  would have left him still subject to the enhancement.  Movant proffers no basis for

17  precluding reliance on his other drug prior.

18  Moreover, as discussed hereinafter, Movant could not show the deferred

19  adjudication was not countable under § 841.

20  **Qualification as a Conviction** – Movant argues that the deferred prosecution

21  could not properly be used as a prior "conviction."

22  Indeed, 21 U.S.C. § 841(b)(1)(B) only provides for enhanced sentencing where a

23  conviction is "final."  However, the Fifth Circuit had plainly held that a Texas deferred

24  adjudication is, for purposes of 21 U.S.C. § 841(b)(1)(A), a final conviction.  *United*

---

[3] Movant makes passing reference to the fact that he was apprehended with less than 77 kilograms (169.4 pounds) of marijuana, less than the 100 kilograms necessary to trigger § 841(b)(1)(B)(vii).  However, as a co-conspirator, Movant was chargeable with the entire quantity "within the scope of [his] agreement with his coconspirators or that the type and quantity were reasonably foreseeable to [him]." *United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003).

1   *States v. Fazande*, 487 F.3d 307, 308 (5th Cir. 2007).  *See also U.S. v. Cisneros*, 112

2   F.3d 1272, 1281 (5th Cir. 1997) (detailing similar holdings from 11th, 3rd, 4th and 7th

3   Circuits).  The Ninth Circuit has focused upon the completion of direct review as

4   triggering the availability of a prosecution for enhancing a sentence under § 841(b)(1).

5   *See Williams v. U.S.*, 651 F.2d 648 (9th Cir. 1981) (concluding that conviction still

6   subject to petition for writ of certiorari was not final).  Under Texas law, "a defendant

7   placed on deferred adjudication has to appeal issues relating to the original deferred

8   adjudication proceeding when deferred adjudication is first imposed." *Daniels v. State*,

9   30 S.W.3d 407, 408 (Tex. Crim. App. 2000).  *Cf. United States v. Valentine*, 401 F.3d

10  609, 616 (5th Cir. 2005) (acknowledging bifurcated appeal process on Texas deferred

11  adjudication).

12    Movant argues that *United States v. Valentine*, 401 F.3d 609 (5th Cir. 2005) is to

13  the contrary.  However, *Valentine* did not involve application of 21 U.S.C. §§ 841 and

14  851, but a determination whether the defendant remained under indictment despite his

15  guilty plea and deferred adjudication in a Texas proceeding.  Valentine had been charged

16  with being an indictee shipping or transporting a firearm, in violation of 18 U.S.C. §

17  922(n).  The Fifth Circuit concluded that the deferred adjudication left the defendant, for

18  purposes of § 922(n), under indictment.  Two years later, notwithstanding its decision in

19  *Valentine*, two years later, the Fifth Circuit decided *Fazande*, and concluded that a Texas

20  deferred adjudication constituted a prior conviction for purposes of § 841.  Thus,

21  *Valentine* would not preclude reliance upon Movant's Texas deferred adjudication.

22    **Only Limited Collateral Attack Permitted** - A defendant's right to collaterally

23  attack a prior conviction is limited.  In general, the right to collaterally attack a prior

24  conviction is limited to claims of a complete denial of counsel.  *Custis v. U.S.,* 511 U.S.

25  485, 496 (1994).[4]  Movant makes no assertion of a denial of counsel in the Texas

26  proceeding.

27

28  ———————————
    [4] No such right exists under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  *Id.* at
    497.

A limited right to challenge a prior conviction exists under 21 U.S.C. § 851(c) under the Comprehensive Drug Abuse Prevention and Control Act of 1970.  *Id.* at 491-492.  However paragraph (2) of section 851(c) specifically references challenges arguing the conviction was obtained "in violation of the Constitution of the United States."  21 U.S.C. § 851(c)(2).   This suggests that attacks permitted under § 851(c) are limited to Constitutional attacks.   The undersigned has found no case law addressing this issue.  Base on the language in § 851(c)(2), the undersigned concluded that challenges under § 851(c) are limited to Constitutional attacks.

Movant proffers nothing to show that his Constitutional rights were violated in the Texas proceeding, merely that the IAD was violated.  "The protections of the IAD are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction."  *United States v. Black*, 609 F.2d 1330, 1334 (9th Cir. 1979).

**IAD Not Applicable** – Even if § 851(c) extends to non-constitutional claims under the IAD, Movant's claim fails because the IAD did not apply to his deferred adjudication.   By its terms, the IAD only applies to detainers based on an "untried indictment, information, or complaint."  18 U.S.C.A. § APP. 2 § 2, Art. III(a).  Movant had pled guilty to the charges.   (Response, Doc. 4, Exhibit A, Order of Deferred Adjudication.)  His guilt was established, and it was only a sentence which had not yet been entered.  "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

**IAD Trial Limit Not Triggered** - Moreover, the 180 day trial limit mandated in the IAD only applies "after [the defendant] shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint."  18 U.S.C.A. § APP. 2 § 2, Art.

III(a).  Movant proffers nothing to suggest that he had ever made such a demand for final disposition.  To the contrary, the correspondence he provides between himself and Texas authorities suggests that he was actively opposing being returned to the government of Texas for a disposition.[5]  (Motion to Vacate, Doc. 1 at Exhibit B (referencing Movant's medical condition and intent to pursue return to Texas nonetheless).

**Withdrawal of Detainer Not Prohibited** – Further, that Texas may have twice removed its detainer, that created no violation of the IAD.[6]  In support of his argument, Movant cites *U.S. v. Mauro*, 436 U.S. 340 (1978), *U.S. v. Knight*, 562 F.3d 1314, 1325-1326 (11th Cir. 2009), and *Bloomgarden v. Bureau of Prisons*, 426 Fed. Appx. 487 (9th Cir. 2011).  However, none of these cases stand for the proposition that a receiving state may not withdraw a detainer.

In *Mauro,* the United States had indicted two defendants then serving state sentences in New York, and served a *writ of habeas corpus ad prosequendum* on the state wardens, obtained custody of the defendants for arraignment, the defendants were then returned to state custody, but obtained again by a writ for a subsequent proceeding.  The defendant argued that this violated the mandate of Article IV(e) of the IAD that a prosecution be completed by the receiving state before a prisoner is returned to the sending state. The Government argued that the *writ of habeas corpus ad prosequendum* did not qualify as a detainer.  The Court adopted the argument and found that obtaining immediate custody under a *writ* was not the equivalent of a detainer (which implied a deferred plan to obtain custody), and thus the IAD's prohibition upon return before

---

[5] The letter reflects that although Movant was in the territory of the State of Texas at the time, he was in federal custody.

[6] Movant provides no evidence that the detainer was withdrawn twice.  He provides one undated letter from Texas authorities addressed to Movant at the 4th Avenue Jail in Phoenix indicating that the detainer with Maricopa County had been withdrawn. (Motion, Doc. 1 at Exhibit C.)  He provides another letter from May 3, 2010, but that letter does not address any detainer, but instead evidences an intent to seek a warrant against Movant if he did not voluntary return to face charges in Carson County, Texas. (*Id.* at Exhibit B.)  In any event, the mere withdrawal of a detainer is not a violation of the IAD.

completion of prosecution did not apply.

*Bloomgarden*, a Ninth Circuit unpublished decision from 2011, *see* F.R.A.P 32.1, involved a similar scenario, where California had served a writ on federal prisoners against whom it had filed a detainer, and then attempted to argue that temporary custody under the writ did not trigger the prisoner's right under the IAD to ask the sending state (in that case the federal government) to disapprove the transfer.  Relying on *Mauro*, the Ninth Circuit rejected the argument, found the writ to trigger the IAD, and held that the prisoner was entitled to rely upon his right under the IAD to request that his transfer be disapproved by the U.S. Attorney General as the equivalent of the governor of the sending state.

Also in *Mauro*, a third defendant, Ford, had been arrested on federal warrants but turned over to state authorities on other matters.  The Government lodged a detainer, and the defendant demanded speedy trial under the IAD.  The Government eventually obtained the defendant's presence by a writ, but failed to proceed to trial in a timely fashion, and the defendant moved to dismiss under the IAD.  The Government argued that the *writ of habeas corpus ad prosequendum* did not qualify as "written request for temporary custody" within the meaning of Article IV of the IAD.  The Court rejected that argument, finding that the means of obtaining temporary custody was not controlling.  In doing so, the Court reasoned: "Because the detainer remains lodged against the prisoner until the underlying charges are finally resolved, the Agreement requires that the disposition be speedy and that it be obtained before the prisoner is returned to the sending State."  436 U.S. at 362.  But this was not a determination that a detainer could not be withdrawn once lodged, only that once custody had been obtained when a detainer was in place, the requirement for a full, speedy determination took effect, and it was irrelevant that the custody was obtained by writ.

At no point did the *Mauro* court consider whether a detainer could be withdrawn.

Similar to the decision in *Mauro* regarding Ford, in *Knight* the Eleventh Circuit simply held that a detainer was not automatically terminated merely because the original

1   indictment under which it had been issued was dismissed without prejudice, and a

2   second indictment then filed.  "Although Knight was in federal custody for only 28 days

3   between the two federal indictments, the failure of the United States to return Knight to

4   state custody, lodge a new detainer, and obtain a *writ of habeas corpus ad prosequendum*

5   kept the 120–day period from resetting so that Knight was in federal custody for more

6   than 120 days after his initial arrival."  Knight, 562 F.3d at 1326.  Although quoting the

7   portion of *Mauro* regarding the detainer remaining in place, at no point did the *Knight*

8   court hold that a detainer could not be withdrawn.  Indeed, its reference to the preference

9   for a new detainer suggests that detainers are not some spectral, eternal thing, but rather

10  something with a limited life, subject to termination on the direction of the receiving

11  state.

12         Indeed, several courts have discussed the propriety of a receiving state

13  withdrawing a detainer.  *See e.g. United States v. Donaldson*, 978 F.2d 381, 390 (7th Cir.

14  1992) ("The withdrawal of the detainer removed Donaldson from the purview of the

15  Act."); *United States v. Koufus*, 280 F. Supp. 2d 647, 650 (W.D. Ky. 2003) ("The Court's

16  order withdrawing the detainer removed Koufus from the purview of the IAD.").  *Cf.*

17  *United States v. Cephas*, 937 F.2d 816 (2d Cir.1991)(180–day provision not tolled after

18  demand for disposition when charges dismissed, but detainer remained lodged, because

19  government did not inform defendant of dismissal of charges).

20         While the IAD may preclude a receiving state from trying to evade the time limits

21  under the IAD by withdrawing a detainer once having obtained custody, Movant proffers

22  nothing to show that occurred here.

23         **DOJ Policy** – For the first time in his Reply, Movant argues that a Department of

24  Justice policy statement issued August 12, 2013 limits the application of § 851 to high

25  level or dangerous drug traffickers.  Thus, he contends, such an enhancement would not

26  have been forthcoming.  (Reply, Doc. 12 at 7.)

27         The undersigned presumes, for purposes of this Report and Recommendation, that

28  counsel would reasonably presume that prosecutors would comply with the policies of

23

1    the Department of Justice in their charging decisions.[7]

2         However, Movant reads too much into the policy.

3         In his Memorandum regarding "Department Policy on Charging Mandatory

4    Minimum Sentence and Recidivist Enhancements in Certain Drug Cases," issued August

5    12, 2013,[8] Attorney General Holder continued a departmental policy calling for

6    individualized charging decisions, but directed that "Prosecutors should decline to file an

7    information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that

8    makes the case appropriate for severe sanctions." *Id.* at 3.  Movant argues, in essence,

9    that he was not a high level or dangerous drug trafficker, and therefore he would not

10   meet that mandate.

11        However, Movant selectively quotes the Attorney General, who directed:  "We

12   must ensure that our most severe mandatory minimum penalties are reserved for *serious*,

13   high-level, or violent drug traffickers."   *Id.* at 1 (emphasis added).  Moreover, the

14   Attorney General then went on to detail the kinds of considerations justifying a decision

15   to charge as a recidivist:

- Whether the defendant was an organizer, leader, manager or supervisor of others within a criminal organization;
- Whether the defendant was involved in the use or threat of violence in connection with the offense;
- The nature of the defendant's criminal history, including any prior history of violent conduct or recent prior convictions for serious offenses;
- Whether the defendant has significant ties to large-scale drug trafficking organizations, gangs, or cartels;
- Whether the filing would create a gross sentencing disparity with equally or more culpable co-defendants; and
- Other case-specific aggravating or mitigating factors.

Thus, counsel could have reasonably concluded that in reaching a decision to charge

Movant as a recidivist prosecutors could look at Movant's expansive criminal history,

---

[7] Because of this presumption, the undersigned need not address whether counsel would have been reasonable in considering the potential for the prosecutors in Movant's case to thwart the policy, nor whether any actions in violation of the policy would have been challengeable by Movant.

[8] Available at http://www.justice.gov/sites/default/files/ag/legacy/2014/04/11/ag-memo-drug-guidance.pdf, last accessed 10/27/15.

24

and the size of the drug operation with which he was involved.  In addition, the policy leaves open the opportunity for prosecutors to consider "[o]ther case-specific aggravating or mitigating factors."  So, for example, counsel could have reasonably concluded that the prosecutors could properly charge Movant as a recidivist based upon the substantial quantity of drugs he was transporting, and his repeated involvement in efforts to transport.  Therefore, even if Movant were not a "high level" or "violent" or "dangerous" trafficker, counsel could have reasonably concluded that the prosecution would bring an enhancement against Movant as a "serious" trafficker.

**Conclusion** - For the foregoing reasons, counsel did not perform deficiently for failing to pursue challenges to reliance on the Texas deferred adjudication, nor for failing to advise Movant about the possibility of such arguments, nor for advising Movant he risked prosecution under § 851.


e) **Ground 1(e) - IAC re Career Offender Guidelines**

In Ground 1(e), Movant argues that trial counsel was ineffective for failing to advise Movant that he was not subject to sentencing under the career offender sentencing guidelines.  Movant argues that two convictions for violence or drugs were required to trigger the guidelines, and his Texas deferred adjudication (one of the two available) did not qualify as a conviction and was invalid because the detainers related to the conviction had been twice removed. (Motion, Doc. 1 at physical page 8-8.)

Respondent argues that Movant was properly subject to a sentencing range of 360 months to life under U.S.S.G. § 4B1.1(b) as a career offender.  (Response, Doc. 4 at 7.)

**Career Offender Requirements** – The Sentencing Guidelines provide substantially enhanced sentencing for a "career offender," and defines the term as requiring, *inter alia*, "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).

Movant does not challenge the argument that application of this guideline substantially expanded the guidelines sentence, but argues the provisions could not

properly be applied to him.

**Texas Deferred Adjudication Qualified As Conviction** – Movant argues that his Texas deferred adjudication did not qualify as a prior conviction for purposes of the career offender guidelines because it did not qualify as a "conviction."

Section 4A1.2 of the Sentencing Guidelines governs the evaluation of criminal histories for purposes of applying the guidelines.  Subsection (f) provides:

> Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2(f).  In *U.S. v. Giraldo-Lara*, 919 F.2d 19 (5th Cir. 1990), the Fifth Circuit held that a Texas deferred adjudication counted as a conviction for purposes of § 4A1.2.  *See U.S. v. Frank*, 932 F.2d 700 (8th Cir. 1991) (treating as a prior sentence a Minnesota deferred adjudication based on a guilty plea).

Movant proffers nothing to show that he had not pled guilty in the Texas proceeding, nor that it was a juvenile proceeding.  The Order of Deferred Adjudication from Texas reflects that he did, in fact plead guilty.  (Response, Doc. 4, Exhibit A.)

**Validity of Conviction Not Assailable Based on IAD** – For the reasons discussed hereinabove in regards to Ground 1(d), the undersigned concludes that Movant's Texas deferred adjudication was not assailable under the Interstate Agreement on Detainers (IAD).  As noted above, a defendant's right to collaterally attack a prior conviction is generally limited to claims of a complete denial of counsel.  *Custis v. U.S.,* 511 U.S. 485, 496 (1994).  "As a general rule, however, collateral attacks on prior state convictions are not permitted in federal sentencing proceedings unless the defendant asserts a total denial of his right to counsel in the previous proceeding."  *United States v. Saya*, 247 F.3d 929, 940 (9th Cir. 2001) (as amended).

Movant proffers nothing to show that he was completely denied counsel in the Texas proceeding.  Thus, any challenge to the Texas proceeding founded upon the IAD

1    would not have been cognizable for purposes of avoiding enhancement under the career

2    offender guidelines.

3        **Conclusion** – Based on the foregoing, undersigned concludes that Movant has

4    failed to allege facts to show that counsel performed deficiently with regard to

5    application of the career offender guidelines.

6

7        f)      **Ground 1(f) - IAC re Buy/Seller Defense**

8        In Ground 1(f), Movant argues that trial counsel was ineffective for failing to

9    investigate an affirmative defense to the conspiracy count based on a buyer/seller

10   relationship between the drug trafficking organization and Movant's aunt and uncle

11   (Motion, Doc. 1 at physical page 9-10.)

12       Respondent concedes that "mere sales to other individuals do not establish a

13   conspiracy to distribute or possess with intent to distribute." *United States v. Moe*, 781

14   F.3d 1120, 1124 (9th Cir. 2015). (Response, Doc. 4 at 11.)  However, Respondents argue

15   the exception is narrow and limited to casual sales for personal use. Respondents argue

16   that the quantity of drugs – 169.4 pounds of marijuana – forecloses a defense of personal

17   use.  (*Id.* at 11-12.)

18       Movant replies that the government could not prove he "knew or agreed to what

19   would happen to the marijuana after it was dropped off to the Ortiz's." He argues that the

20   quantity he possessed would have made a conviction on the conspiracy charge unlikely.

21   (Reply, Doc. 12 at 4-5.)  He argues that the evidence showed an isolated transaction

22   (involving one attempt and one completed transaction), and no other direct relationship

23   between Movant and the Ortiz DTO, and that they didn't even bother to bail him out of

24   jail.  (*Id.* at 13-15.)  He argues this is insufficient to show the kind of prolonged and

25   actively pursued course of sales necessary to proving a conspiracy, citing *U.S. v.*

26   *Ramirez*, 714 F.3d 1134 (9th Cir. 2013).  (*Id.* at 15.)

27       Movant overstates the quantum of proof necessary for a conspiracy to transport

28   drugs.

It is true that the mere purchase or sale of drugs is not sufficient to establish a conspiracy.

> As most circuits have held, proof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy. Rather, conspiracy requires proof of "an agreement to commit a crime other than the crime that consists of the sale itself." Were the rule otherwise, every narcotics sale would constitute a conspiracy.

*United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994).  This is so even if the seller knows the buyer intends to further distribute the drugs.  *Id.*

> Thus, for a charge of conspiracy to possess a drug with intent to distribute, "the government must show that the buyer and seller had an agreement to further distribute the drug in question." "Express agreement is not required; rather, agreement may be inferred from conduct."

*Moe*, 781 F.3d at 1124-25 (citations omitted).

The *Moe* court recognized that "[d]istinguishing between a conspiracy and a buyer-seller relationship requires a fact-intensive and context-dependent inquiry that is not amenable to bright-line rules."  *Id.* at 1125.  The court distinguished between the "casual sale of drugs, of a quantity consistent with personal use on the part of the buyer, with no evidence of any subsequent (or planned) redistribution of purchased drugs" and the case "where there is ' 'evidence of a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture.'''  *Id.* (quoting *Ramirez*, 714 F.3d at 1140).

Movant essentially argues the former better describes his situation.  But here there was no mere buying and selling relationship between Movant and the Ortiz DTO. Movant was not an arms-length purchaser or seller of drugs who just happened to be doing business with someone else with the intent to distribute.[9]  Rather, the expected evidence showed that Movant was acting on behalf of the Ortiz DTO in going to pick up

---

[9] Perhaps Movant intends to argue that he was actually working for his aunt and uncle, who were involved in selling drugs to the Ortiz DTO.  If so, then perhaps the buyer/seller exception might apply.  But then that would have simply moved Movant from the frying pan into the fire, making him a co-conspirator with his aunt and uncle.  But, Movant neither makes that factual claim explicit, nor does he proffer anything to support it.

(and eventually deliver to the Ortiz's) the drugs.  Nor could Movant credibly argue to a jury that the Ortiz's expected to personally use 169.4 pounds of marijuana.  The intent to distribute, and the agreement to participate by delivering the drugs to be distributed, would be obvious to all but the most trusting (or arguably naïve) of jurors.

Movant objects that this was a short lived engagement of 15 days with only two acts, the failed trip and the one resulting in his arrest.  The reference in *Ramirez* to a prolonged course of dealing arose in the context of distinguishing between a few sales to a presumed distributor and the kind of repeated sales which would show the necessary agreement to distribute.  The typical seller does not care what the buyer does with the purchased goods, and has no reason to agree to that conduct.  He simply wants to exchange product for money.  For all he cares, the buyer can throw away the product. Had Movant been engaged in selling drugs to the Ortiz's for his own profit, then perhaps he could rely upon *Ramirez*.  But here, the import of the Government's case was that Movant was delivering the drugs not for his own direct profit, but to assist the Ortiz's in their own distribution.  That would amount to an agreement to further distribution.

Even if some novel extension of the *Lennick*, *Moe*, and *Ramirez* line of cases could be imagined that would have legally mandated acquittal, the undersigned cannot find that counsel acted unreasonably in failing to develop such a novel argument or nonetheless advising Movant that a conviction at trial was likely.  "Counsel's failure to raise this novel argument does not render his performance constitutionally ineffective." *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005)

g)      **Ground 1(g) - IAC re Co-Defendants Pleas**

In Ground 1(g), Movant argues that trial counsel was ineffective for lying to Movant that his co-defendants "had already signed pleas." (Motion, Doc. 1 at physical page 11.) In support, Movant attaches a December 3, 2013 letter from plea counsel stating the co-defendants "are accepting pleas" (*id.* at Exhibit D), and a press release from the United States Attorney's Office showing that the co-defendants' change-of-plea

1   hearings occurred shortly after his (*id.* at Exhibit E.).

2       Respondents argue that the record reflects that counsel's advice was accurate.

3   (Response, Doc. 4 at 9.)

4       Movant does not reply.

5       Indeed, Movant fails to proffer anything to show that co-defendants had not

6   signed pleas at the time he entered his own guilty plea on December 5, 2013.[10]   The

7   letter from plea counsel (dated a few days before Movant pled guilty), simply indicates

8   that the co-defendants were all "accepting pleas," which is not inconsistent with them

9   having signed pleas.  The press release simply reports the ultimate sentencing and the

10  entry of guilty pleas on a variety of dates in December, 2013 and on January 3, 2014,

11  which is not inconsistent with having signed pleas on December 5, 2013.  While Movant

12  may have entered his plea on the same date he signed the plea agreement, that was

13  neither required for his co-defendants, nor necessarily normal.

14      Accordingly, the undersigned cannot find that counsel acted unreasonably in

15  advising Movant that the co-defendants had signed pleas.

16

17      h)      **Ground 2 - Disclosures**

18      Finally, Movant complains in his Ground 2 that he was constructively denied

19  counsel because the prosecution failed to make disclosures of evidence to show that the

20  agent obtaining the wiretap lied in his affidavit.  To the extent that Movant would

21  contend that this rendered counsel's advice on his guilty plea ineffective, the claim must

22  fail.  Movant's arguments suggest two bases for relevance of the undisclosed evidence:

23  (1) exclusion of the resulting wiretap information; and (2) impeachment of the agent.

24  Neither is a valid basis.

25      To the extent that Movant intends to argue that the wiretaps were obtained

26  improperly, as discussed hereinabove, any such impropriety in was not assertable by

27  _____

28  [10] Nor does he suggest how his decision to accept a plea was affected by such advice,
    preventing a finding of prejudice.

1   Movant because he was not a party to the intercepted calls, and therefore he had no
2   standing to object.

3       Second, to the extent that Movant complains he could use the information to
4   impeach the agent, his underlying claim is not meritorious.  Although the Ninth Circuit
5   has held that failure to disclose material exculpatory information may render a plea
6   involuntary or unintelligent, *Sanchez v. U.S.*, 50 F.3d 1448 (9th Cir. 1995), "the
7   Constitution does not require the Government to disclose material impeachment
8   evidence prior to entering a plea agreement with a criminal defendant." *United States v.*
9   *Ruiz*, 536 U.S. 622, 633 (2002).

10      Accordingly, the undersigned cannot find that counsel acted unreasonably in
11  failing to pursue disclosures regarding the misrepresentations in the wiretap request
12  affidavit.

13

14      i)      **Prejudice**

15      Respondents argue that even if counsel somehow performed deficiently in
16  advising Movant on his guilty plea, that Movant fails to show prejudice, *i.e.* that but for
17  such deficient advice, he would not have pled guilty but would have proceeded to trial.

18      Ordinarily, at this stage, the undersigned would ignore the foregoing performance
19  evaluations, and presume that counsel if performing reasonably would have proffered the
20  advice posited by Movant.  Then, the undersigned would evaluate the circumstances to
21  judge the credibility of Movant's assertion that he would not have otherwise pled guilty.

22      Here, it is plain that Movant was reticent to plead guilty.  From his conduct at the
23  time, it is apparent that Movant was busily second-guessing counsel and working to
24  develop defenses, albeit futile ones.  There is at least some potential that, proffered any
25  glimmer of hope, Movant would have rejected the plea offer and proceeded on towards
26  what, at least from this vantage, appears to have been the very high likelihood of a
27  conviction and at least a substantial potential for a much longer sentence than he
28  received under the plea.  For some defendants, that risk is such a likely deterrent that

31

claims to have preferred trial are incredible.  Here, however, one has to wonder whether Movant would have resisted the urge to roll the dice in the face of anything other than the consistently dismal prospects Movant complains counsel painted.

Fortunately for defendant, his counsel (both plea counsel and sentencing counsel) were not swayed by Movant's efforts to impose his theories on them, and instead proffered seasoned and well reasoned advice.  In all likelihood that advice has saved Movant years, and potentially the rest of his life, in prison.

In any event, a court may reject a claim of ineffectiveness upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Strickland*, 466 U.S. at 697.  Thus, the undersigned does not reach the prejudice issue.

j)     **Summary**

Movant has failed to show that plea counsel (Mr. Kessler) performed deficiently in advising Movant to plead guilty, whether through failing to conduct investigations, or in the counsel given Movant. For the same reasons, Movant has failed to show that sentencing counsel (Mr. Baggot) was ineffective for failing the foregoing claims of ineffectiveness of plea counsel.

Because Movant has failed to establish ineffective assistance of counsel in entering into the plea agreement, Movant is bound by his waiver of his collateral attack rights, and this Motion must be dismissed with prejudice.

## IV.    MOTION FOR INVESTIGATOR

On July 10, 2015, Movant filed a Motion [Request] for Appointment of an Investigator (Doc. 11).  Movant argues an investigator is required to "interview Pinal County deputy La Silva and to obtain March 7th, 2012 arrest/booking slip to establish that plea counsel failed to do an adequate investigation into his client's claim that deputy Williams lied in his report when he stated that he had completed the traffic stop by giving petitioner his documents back prior to searching Petitioner's vehicle." (*Id.* at 1.)

Movant seeks that information to support his argument that counsel was ineffective for failing to pursue Movant's assertions that the traffic stop had been completed at the time his vehicle was searched.

Respondent has not responded.

As discussed hereinabove in connection with Movant's assertions of ineffective assistance in Ground 1(a), the relative time relationship between the completion of the traffic stop and the search is not controlling. Moreover, Movant's underlying argument is founded upon the subsequent decision in *Rodriguez*, which counsel was not deficient for failing to anticipate.

Accordingly, the motion will be denied.

## V.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2255, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Movant's Motion being resolved adversely to Movant. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the procedural grounds that Movant has waived his collateral attack rights. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the procedural ruling is correct.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion, a certificate of appealability should be denied.

# VI.   ORDER

**IT IS THEREFORE ORDERED** that Movant's Motion [Request] for Appointment of an Investigator, filed July 10, 2015 (Doc. 11) is **DENIED**.

# VII.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed December 1, 2014 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

# VIII.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules*

34

1    *of Appellate Procedure*, should not be filed until entry of the district court's judgment.

2            However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties

3    shall have fourteen (14) days from the date of service of a copy of this recommendation

4    within which to file specific written objections with the Court.  *See also* Rule 10, Rules

5    Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days

6    within which to file a response to the objections.  Failure to timely file objections to any

7    findings or recommendations of the Magistrate Judge will be considered a waiver of a

8    party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*,

9    328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's

10   right to appellate review of the findings of fact in an order or judgment entered pursuant

11   to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

12   47 (9th Cir. 2007).

13

14   Dated: November 3, 2015

15   14-2608r RR 15 10 22 on HC.docx

James F. Metcalf
United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28